## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROY HICKS                                         :

    Petitioner                                :

    v                                         :          Civil Action No. JFM-05-2915

STATE OF MARYLAND                                 :

    Respondent                                :

o0o

## MEMORANDUM

The above-captioned petition for writ of habeas corpus, filed October 21, 2005, alleges that petitioner's medical parole was wrongfully revoked by the Maryland Parole Commission in violation of his due process rights and state regulations.  Paper No. 1.  Respondent has filed an answer with exhibits addressing the allegations raised.  Paper No. 10.  Upon review of the papers, this court finds that hearing in this matter is not necessary.  For the reasons that follow, the petition shall be denied.

Petitioner was sentenced to serve a life sentence on September 29, 1987, upon conviction of felony murder and robbery with a deadly weapon in the Circuit Court for Baltimore City.  Paper No. 10 at Ex. A.1.  On June 10, 2002, the Commissioner of Correction requested the Maryland Parole Commission consider petitioner for release on medical parole because he was in the end stage of AIDS and bedridden and presented no threat to public safety.  *Id*. at Ex. A.3.  On July 10, 2002, the Parole Commission made a recommendation to the Governor to grant petitioner medical parole.  *Id*. at Ex. A.4.  The recommendation described petitioner's medical condition as follows:

> Mr. Hicks is 43 years of age and is in the end stage of AIDS.  He is comatose and would receive hospice care if paroled.  The doctor has given this inmate less than six months to live.  He is not likely, in this condition, to be a risk to public safety.

*Id.* Based on that recommendation, the Governor granted petitioner medical parole on July 17, 2002, with two special conditions noted. *Id.* at Ex. A.5. Those conditions required that the Parole Commission receive a report on any significant change in petitioner's medical status and if petitioner's medical condition improved so that he no longer required long-term care, he would be returned to the Maryland Division of Correction to serve his sentence. *Id.* The Commissioner of Correction was notified that petitioner had been approved for medical parole on August 13, 2002, but he was not released[1] until September 19, 2002. *Id.* at Ex. A.6 and A.7.

On October 9, 2002, a Division of Parole and Probation report was received by the Parole Commission indicating that petitioner's behavior and appearance was the opposite of what was noted in his release summary. *Id.* at Ex. A.8. The report alleged that based on observations of his behavior as well as his underlying conviction, petitioner presented a threat to public safety. *Id.* It was also alleged in the Division's report that petitioner had violated rule 8[2] as well as a special condition of his parole. *Id.* at p. 2. According to the report which summarized reports from nursing home staff, petitioner arrived on a stretcher but was soon thereafter able to get up and walk around on his own. *Id.* In addition, it was noted by nursing home staff that petitioner was able to provide for himself; had requested and had been given several doses of Viagra; had a conjugal visit with his girlfriend; was very demanding and impatient with staff; and frequently acted out in a threatening manner when staff did not respond to his demands immediately. *Id.* Based on the report, a retake warrant was issued by the Parole Commission on the day it was received. *Id.* at Ex. A.9. On

---

[1] Petitioner was released to Millenium Health and Rehabilitation Center, a nursing home in Baltimore. Paper No. 10 at Ex. A.7.

[2] Rule 8 of petitioner's parole conditions required petitioner to "conduct [himself] as not to present a danger to [himself] or others." Paper No. 10 at Ex. A.7, p. 2.

October 11, 2002, petitioner was returned to the custody of the Division of Correction based on the retake warrant. *Id*. at Ex. A.10.

Petitioner was initially scheduled for a revocation hearing on April 16, 2003, but the hearing was postponed when Commissioner Murphy determined she needed more information regarding petitioner's diminution of confinement credits. *Id*. at Ex. A.18, p. 8. Another revocation hearing was scheduled for June 5, 2003; however, Commissioner Woods postponed the hearing because he wanted to have a staff member from the nursing home present to describe petitioner's behavior. *Id*. at Ex. A.11. On January 9, 2004, a scheduled revocation hearing was again postponed, this time, by Commissioner Blount, because witnesses had not been subpoenaed. *Id*. at Ex. A.12. The revocation hearing was postponed on two additional occasions, January 29, 2004 and February 5, 2004, once because petitioner's attorney was not available and once due to inclement weather. *Id*. at Ex. A.13 and A.14.

A revocation hearing was ultimately held on March 17, 2004, before Commissioner Blount. *Id*. at Ex. A. 13. After finding that the postponements in the case were justified by good cause, testimony was taken from both petitioner and his Parole Agent Carter. During the hearing it was established that the basis for the allegation that petitioner did not conduct himself so as not to pose a danger to himself or others was his alleged conjugal visit with his girlfriend. *Id*. at p. 40. When provided an opportunity to address the charge, petitioner denied the allegation and asserted that the word "conjugal" was never defined for him. In addition, he denied ever admitting to nursing home staff that he had a conjugal visit and denied ever taking Viagra. For purposes of violation of Rule 9, the special condition that petitioner's medical condition continued to require long-term care, the evidence presented by Agent Carter consisted of reports by the director of the nursing home that

3

petitioner was able to walk around the facility and that he was threatening staff.  This report, as well as Agent Carter's observations of petitioner at the nursing home, sharply contrasted with the request for medical parole describing petitioner as comatose, bedridden and requiring intensive medical attention.  Petitioner took the position that he had no control over whether his medical condition improved and the fact that it did should not be the basis for a penalty against him.  After hearing the evidence and resolving all credibility issues in favor of Agent Carter, Commissioner Blount made the decision to revoke petitioner's parole.  *Id*. at Ex. A.13, p. 77 and Ex. A.14.

Following the revocation of parole, [3] petitioner filed a petition for judicial review in the Circuit Court for Baltimore City on March 29, 2004.  *Id*. at Ex. A.25.  In his petition he alleged that his supervising parole agent lied during the revocation hearing when she said he admitted to using Viagra, which was the sole reason she sought to have him arrested.  He also alleged the Commission should have included a transcript of the June 5, 2003 revocation hearing in the record of its proceedings.  *Id*. at Ex. A.29.  In response to the allegations raised by petitioner, the Commission asserted that the decision to revoke parole was supported by substantial evidence; was not the result of an abuse of discretion; and the June 5, 2003,  transcript was unavailable because it has been erased.  *Id*. at Ex. A.30.

On January 12, 2005, at a hearing on the merits of the petition for judicial review, petitioner

---

[3] Prior to the decision to revoke his parole, petitioner filed a petition for writ of habeas corpus alleging that insufficient evidence of a parole violation had been produced at a June 5, 2003 hearing. Paper No. 10 at Ex. A.15.  In his petition he alleged that his medical parole was conditioned on the sole contingency that if he recovered from his illness by 77 % he would have to return to Division of Correction custody; it is impossible to recover from AIDS by 77%; and other conditions of his parole were added after he signed the parole order and therefore violated the *ex post facto* clause.  Paper No. 10 at Ex. A.16.  After determining that petitioner was not entitled to release because his parole had been revoked, the petition was denied on June 10, 2004, by Judge Stuart Berger of the Circuit Court for Baltimore City.  *Id*. at Ex. A.23.

presented an amended memorandum raising additional allegations, requesting default judgment against the Parole Commission and offering a settlement.  *Id*. at Ex. A. 32.  Petitioner asserted, in his amended memorandum, that he had not been served with a retake warrant before his revocation hearing; he had not been afforded a preliminary hearing upon his return to Division of Correction custody; his revocation hearing was untimely; and the March 17, 2004 revocation hearing violated double jeopardy.  *Id*.  Judge Prevas heard the evidence presented and issued a decision in open court affirming the decision to revoke petitioner's parole.  *Id*. at Ex. A.31, pp. 34– 35 and Ex. A.33.  Although petitioner attempted to appeal the Circuit Court's decision to the Court of Special Appeals, the appeal was dismissed because it is not authorized under Maryland law.  *Id*. at Ex. A.34 and A.35.  A subsequently-filed petition for writ of certiorari filed with the Court of Appeals was denied on September 9, 2005.  *Id*. at Ex. A.37.

Here, petitioner assigns the following errors to the revocation of his parole: there were no medical reports submitted, nor any doctor's testimony presented, to establish a change in his medical condition; regulations regarding provision of a preliminary hearing, a timely revocation hearing and service of the retake warrant were violated; and the basis for the revocation was based on a lie regarding an alleged conjugal visit.  Paper No. 1.  To the extent that portions of petitioner's claims rely upon violations of state regulations, those claims do not present a federal issue and cannot form the basis for habeas relief.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.   In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 503 U.S. 62, 67- 68 (1991).  To the extent that the regulatory protections provided reflect what is required constitutionally, however, the claims are subject to federal review.

In order to be entitled to the protections of the Due Process Clause, a person must have a constitutionally protected life, liberty or property interest must be at stake.   The Supreme Court recognized that a liberty interest exists in the context of parole revocation in *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  At a revocation hearing, a parolee is entitled to written notice of claimed violations of parole; disclosure of evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; the right to confront and cross-examine adverse witnesses; the right to have a neutral and detached hearing body consider revocation; and a written statement by fact-finders as to evidence relied on and the reasons for revoking parole.  *Id*. at 489. Although minimum procedural rights were delineated, the Supreme Court recognized that a parole revocation hearing should remain informal to permit receipt of evidence not ordinarily admissible in a criminal trial.  *Id*. at 489.  In addition, the revocation hearing must be "structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior."  *Id*. at 484.

The evidence produced at the parole revocation hearing did not include a medical report stating that petitioner's medical condition had improved.  The failure to produce a medical report, however, is inconsequential in this case. The nature of petitioner's parole was unique inasmuch as it was granted with the understanding that petitioner was in need of intensive nursing care because of his failing health.  It was specifically premised on his medical status and required revocation upon evidence that he no longer required the intensive nursing care.  The change in his medical status was readily discernible and did not require expert medical evidence.  *See Morrissey*, 408 U.S. at 489 (parole revocation hearing is informal and does not require evidentiary standards of a criminal prosecution).   As observed by Judge Prevas in affirming the revocation decision:

6

> [T]he governor signed off on a conditional medical parole that said because the defendant was invalid and within six months of his death that he could be released to the nursing home but there had to be reports every thirty days as to his medical condition because as soon as his medical condition improved to the point where he was not on death's door then he would be returned to the Division of Correction. So unlike other paroles this one was conditional upon his medical status.

Paper No. 10 at Ex. A.31 at p. 34.   The document granting petitioner medical parole described him as comatose and incapable of caring for himself.  It is clear that petitioner was no longer comatose or incapable of caring for himself upon his arrival at the nursing home.  While petitioner goes to great lengths to deny that he had a conjugal visit or that he received Viagra, he does not dispute that he was conscious and able to move around freely during his stay at the nursing home.  The claim regarding a failure of proof is therefore without merit.

Petitioner's claim that he was not provided with a copy of the retake warrant at the time of his arrest is a bald allegation unsupported by the evidence in this case.  A review of the transcript of petitioner's parole revocation hearing reveals that he was aware of the allegations leading to the revocation hearing.  In addition, the parole agent testified that the invariable practice is to serve the retake warrant on the parolee when he is taken into custody.  The parole commissioner found the testimony of the parole agent more credible on this issue, and in any event, it is clear that petitioner had actual notice of the basis for his parole revocation.  *See Morrissey*, 408 U.S. at 489 (formality of a criminal prosecution is not required).

Petitioner's claim that his revocation hearing was not provided in a timely manner is also not sufficient to warrant federal habeas relief.  To be entitled to relief, petitioner must establish that the delay was both unreasonable and prejudicial.  *See Gaddy v. Michael*, 519 F. 2d 669, 673 (4th Cir.

1975). Prejudice is established only where the delay deprives the parolee a fair opportunity to defend himself against the revocation charges. *See id.* at 678 (parolee must show what evidence and what witnesses he would have presented at a timely hearing and were unavailable due to delay). Petitioner has never raised any allegations, either in the state court proceedings or in this court, suggesting he was unable to present specific evidence at his parole revocation hearing because of delay.

Finally, petitioner's claim that the parole revocation was based on a lie is a matter of witness credibility determination. The hearing commissioner resolved the credibility issue in favor of the parole commission and against petitioner. This court will not revisit that determination as witness credibility determinations are not susceptible to appellate or habeas review. *See United States v. Saunders*, 886 F.2d 56, 60 (4th Cir. 1989); *Pigford v. United States*, 518 F.2d 831, 836 (4th Cir. 1975).

Having found no basis for federal habeas relief, the petition for habeas corpus shall be denied in a separate order which follows.


May 11, 2006                                          /s/_____

Date                                                 J. Frederick Motz
                                                     United States District Judge